UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INDIAN PATH MEDICAL CENTER, et al.,<br><br>                Plaintiffs,<br><br>                v.<br><br>MICHAEL O. LEAVITT,<br><br>                Defendant. | Civil Action 04-01000 (HHK) |

MEMORANDUM OPINION

In 2003, Congress passed legislation directing the establishment of a one-time appeal process that allowed hospitals to challenge their "wage index" geographic classification and request reclassification to a different geographic area for a limited time. Plaintiffs, five not-for-profit hospitals located in Tennessee, bring suit against Michael O. Leavitt in his official capacity as Secretary of the Department of Health and Human Services ("the Secretary"), challenging a certain criterion issued by the Secretary in 2004 with regards to this one-time appeal process. Plaintiffs assert that this criterion is "arbitrary, capricious, and unreasonable, and is an unlawful and unconstitutional defect in the one-time process," Am. Compl. ¶ 1, and seek an order requiring the Secretary to revise the criterion and to reconsider plaintiffs' applications under that revised criterion.

Before the court is the Secretary's motion to dismiss for lack of subject matter jurisdiction [#15]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted due to plaintiffs' lack of standing.

I.  BACKGROUND

The Medicare program, established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides a system of health care to eligible elderly and disabled individuals.  Under this program, hospitals are reimbursed for providing certain inpatient hospital services.  In 1983, Medicare began paying hospitals using a Prospective Payment System ("PPS"), under which payments are based on previously determined rates that vary according to the patient's diagnosis.  *Id.* § 1395ww(d).[1]  To account for wage variances due to geographic location, the Medicare program also adjusts payment rates using a "wage index."  The wage index is a comparison of the average hospital wage for the geographic location in which the hospital is located and the national average hospital wage.  *Id.* § 1395ww(d)(2)(H), (3)(E).

All hospitals participating in the Medicare program are classified as being located in a "large urban area," an "other urban area," or a "rural area."  *Id.* § 1395ww(d)(2)(D).  That classification is in turn used to compute the wage index, which in turn determines the payment rates for that area.  As such, geographic classification has a direct and significant impact on the amount of reimbursement a hospital receives for a given service.

To address the concerns of hospitals that argued that they had been improperly classified to a geographic area that did not reflect the higher wage costs they incurred, Congress amended the Medicare Act, effective October 1, 1988, to allow the Secretary to reclassify the geographic region of certain hospitals for purposes of determining, *inter alia*, the area wage indices. Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4005(a), 101 Stat. 1330,

---

[1] The specific payment rate to be applied depends, in part, on which of the approximately 490 diagnosis-related groups best characterizes the patient's diagnosis and treatment.  *Id.* § 1395ww(d).

1330-47 and -48 (1987), as amended by Medicare Catastrophic Coverage Act of 1988, Pub L. No. 100-360, § 411(b)(4), 102 Stat. 683, 770 (1988) (codified at 42 U.S.C. § 1395ww(d)(8)(B)). Congress intended these changes to apply to the "limited number of hospitals" that merit "payment at the other urban rate or the large urban rate because of their location in counties adjacent to at least one [urban area] and their commuting patterns." 55 Fed. Reg. 36,754, 36,755 (Sept. 6, 1990).

After these amendments were enacted, many hospitals applied for reclassification but were denied relief because they did not meet the requirements set forth in the statute. To address the concerns of the hospitals that had been denied reclassification, Congress soon thereafter established the Medicare Geographic Classification Review Board ("MGCRB"), whose function is to review applications for reclassification according to statutory standards and guidelines prescribed by the Secretary. 42 U.S.C. § 1395ww(d)(10). Under the statute, if an individual hospital is dissatisfied with the MGCRB's decision, it can appeal to the Secretary, who considers the appeal and renders a decision within 90 days as to whether it is correct and whether further administrative action is necessary. The Secretary's decision is final and not amenable to further review by the judiciary. *Id.* § 1395ww(d)(10)(C)(iii)(II).

The Secretary has since promulgated regulations setting forth criteria and conditions for use by the MGCRB when rendering reclassification decisions. *See* 42 C.F.R. § 412.230 *et seq*. The regulation implicated in this case sets forth the criteria that all PPS hospitals in urban counties must meet in order to be reclassified into a different urban area. 42 C.F.R. § 412.234. Among other things, § 412.234 requires that all such hospitals apply for redesignation as a group;

that the county in which these hospitals are located be adjacent to the urban area to which they seek reclassification; and that their average incurred costs be more comparable to the amount paid under the reclassified rate than under their current classification.

In December 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003).  Section 508 of this Act required the Secretary to establish, by January 1, 2004, a "one-time appeals process" under which certain hospitals that otherwise would be ineligible for reclassification could file an appeal of their wage index classification and request reclassification into another area.  If successful, the hospital would be reclassified for a three-year period beginning April 1, 2004.  42 U.S.C. 13955ww note.  Congress indicated that there was to be no administrative or judicial review of the outcome of this appeal and limited the expenditures that could result from reclassification under the appeal process to $900 million.  *Id.*

Under this one-time appeal process, a hospital qualified for reclassification if it satisfied a number of statutory requirements and met "such other criteria, such as quality, as the Secretary may specify by instruction or otherwise."  *Id.*  Pursuant to the Act, the Secretary set forth eight categories of hospitals that would be eligible for reclassification.  *See* Medicare Program; Notice of One-Time Appeal Process for Hospital Wage Index Classification, 69 Fed. Reg. 661, 662–63 (Jan. 6, 2004) ("January Notice").  One of these categories—the so-called Category D—allows hospitals that have been "part of an [unsuccessful] urban county group reclassification application to the MGCRB for FY 2004 or FY 2005 in accordance with [42 C.F.R.] § 412.234," *id.* at 663, to qualify for reclassification.

Plaintiffs concede they do not meet the requirements of Category D because they were not part of a previously filed urban county group application that had been denied by the MGCRB. Nonetheless, plaintiffs timely applied for reclassification under Category D, stating that they had not filed a previous group application because they knew that they failed to meet the requirements and that applying, therefore, would have been futile. Plaintiffs argued that the "filing, or non-filing, of an actual application should not preclude a hospital . . . from availing itself of this opportunity [for reclassification] especially when the circumstances for said facility mirror those of the hospitals who may have in fact filed such applications." Am. Compl., Ex. A.

By correspondence dated April 16, 2004, the MGCRB denied each of plaintiffs' applications on the grounds that the hospitals failed to meet the requirements of Category D. After reviewing all of the applications, MGCRB ultimately reclassified a total of 121 hospitals under the one-time appeal process, obligating the entire $900 million allocated by Congress. Def.'s Mot., Ex. 1, ¶ 3. In fact, MGCRB determined that 154 additional hospitals met the criteria for reclassification but were nonetheless denied reclassification due to lack of funds. *Id.*, ¶ 4.

Plaintiffs have since filed a two-count complaint arguing that the requirements of Category D violate both constitutional guarantees of due process and the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*[2] Plaintiffs seek a declaratory judgment that the Secretary's promulgation of Category D was arbitrary, capricious, and an abuse of discretion and that its requirements were both substantively and procedurally invalid as a matter of law.

---

[2] Plaintiffs filed their initial complaint on June 18, 2004. After the Secretary filed a motion to dismiss, plaintiffs amended their complaint on February 4, 2005.

Plaintiffs further seek an order requiring the Secretary to revise Category D and reconsider their applications under the revised criteria. Am. Compl. at 19 & 20.

## II. ANALYSIS

The Secretary moves to dismiss plaintiffs' amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.[3] The Secretary argues that plaintiffs' claims for injunctive and declaratory relief must be dismissed because (1) plaintiffs lack standing, (2) their claims are moot, (3) Congress expressly precluded judicial review of the Secretary's reclassification decisions, and (4) the discretion to create criteria for the one-time appeal process was committed by law to the agency and is not reviewable by this court.[4] Because plaintiffs lack standing, the court shall not address the Secretary's other arguments and will dismiss plaintiff's amended complaint.

The party invoking federal jurisdiction bears the burden of demonstrating standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To meet this burden, the following must be established: (1) that the plaintiff suffered an "injury in fact;" (2) that the injury is "fairly

---

[3] In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court should construe the plaintiff's complaint liberally, giving him the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Nonetheless, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Additionally, a court may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

[4] The Secretary also contends that plaintiffs cannot seek prospective injunctive relief because plaintiffs face no threat of future injury. *See* Def.'s Mot. at 23–27 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Because plaintiffs concede that they do not seek prospective injunctive relief involving future reclassification applications, but rather seek reconsideration of their previously filed one-time appeal applications, this argument is moot.

. . . trace[able] to the challenged action of the defendant;" and (3) that the injury will "likely" . . . be "redressed by a favorable decision." *Id.* at 560–61 (citations omitted); *see also Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 431 (D. C. Cir. 1998) (en banc).  Because standing is "an indispensable part of a plaintiff's case, each element must be supported in the same way as any other matter upon which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561.

While the court is satisfied that plaintiffs have demonstrated the first two requirements of Article III standing, it must nonetheless dismiss plaintiffs' amended complaint because plaintiffs have failed to demonstrate that their injury will likely be redressed by a favorable decision from this court.  The redressability requirement is meant to ensure that the "relief sought, assuming the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996); *see also Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 310 F. Supp. 2d 216, 228–29 (D.D.C. 2004) (a plaintiff must show that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'") (quoting *Lujan*, 504 U.S. at 561).  Here, there is no reasonable likelihood that a favorable decision will remedy plaintiffs' injury.

As a preliminary matter, it is clear that the court is not empowered either to order the Secretary to grant plaintiffs' reclassification applications or to require him to revise Category D in any particular fashion.  Rather, because this court acts as an appellate court in administrative review cases of this type, the most it is empowered to do is to remand and order the Secretary to take further action consistent with the law.  *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (holding that when a court finds that agency action is unlawful, "the proper

course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."); *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further actions consistent with the corrected legal standard.") (citing *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)). For this reason, at least some of the relief sought by plaintiffs—namely an order requiring the Secretary to revise Category D "such that it no longer requires that the hospital first participate in a failed wage index appeal," Am. Compl. p. 18 & 19—is beyond the authority of this court.

Moreover, plaintiffs have failed to demonstrate that were the court to grant the only possible relief available—remand with instructions to take further actions consistent with the corrected legal standard—their injuries would "likely" be redressed. Instead, the Secretary convinces this court that plaintiffs' chances of ever receiving additional funds under the one-time appeal process are, at best, "merely speculative." *Lujan*, 504 U.S. at 561; *see also Ranger Cellular v. FCC*, 348 F.3d 1044, 1050 (D.C. Cir. 2003) ("While it is true that 'a plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit . . . even though the plaintiff may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity,' a plaintiff's injury is neither cognizable nor redressable when such an opportunity is entirely 'illusory.'") (quoting *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150–51 (D.C. Cir. 1989)); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56 (D.C.

Cir. 1991) ("Although we do not require those claiming standing to show that but for the alleged illegal conduct of the agency, they would have received the position, we cannot find a basis for standing if there is no realistic possibility of those competing for a position to receive it once the supposed illegality is corrected.") (citations omitted).[5]

A number of facts compel this court to conclude that plaintiffs have no realistic possibility of having their injuries redressed by a favorable decision on the merits.  First, the one-time appeal process has been completed and plaintiffs do not face the prospect of injury from future application of Category D.  Second, Congress only authorized the expenditure of $900 million for purposes of paying the reimbursements that resulted from successful wage reclassification requests under the one-time appeal process.  *See* 42 U.S.C. 13955ww note ("Limitation on Expenditures.—The aggregate amount of additional expenditures resulting from the application of this section shall not exceed $900,000,000.").  Third, according to a declaration submitted by the Secretary, this entire amount has already been obligated, since April 2004, to 121 hospitals.  Def.'s Mot., Ex. 1, ¶ 3.  Fourth, there is no implication that any of the 121 hospitals that were reclassified under the one-time appeal process were undeserving or less deserving of the funds than plaintiffs.  Fifth, over 150 hospitals who qualified for reclassification under the one-time appeal process have nonetheless been denied reclassification due to lack of

---

[5] Plaintiffs correctly argue that they are not required to demonstrate guaranteed success on remand in order to meet their burden of establishing redressability. Pls.' Opp'n at 17–23 (citing *W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570 (D.C. Cir. 1984) and *Samaritan Health Ctr. v. Heckler*, 636 F. Supp. 503 (D.D.C. 1985)). In all the cases cited by plaintiffs to support this contention, however, there remained a "realistic possibility" that the plaintiffs' injury would be redressed on remand. Here, there is no such possibility given that all of the funds appropriated by Congress for the one-time appeal process have been obligated to other qualifying hospitals.

funds. Given these facts, it is clear that, even were this matter remanded to the Secretary with instructions to reconsider plaintiffs' applications, the Secretary would not grant those applications because doing so would require him either to spend money in excess of what has been appropriated by Congress[6] or to revoke the reclassification of another qualified hospital, something the Secretary has indicated that he does not intend to do. Def.'s Reply at 11. Proceeding to the merits, therefore, would be a futile exercise and a waste of judicial resources.

Plaintiffs make a number of arguments in an attempt to avoid this result, none of which are sufficient to establish the redressability prong of plaintiffs' Article III standing burden. First, plaintiffs argue that, were the court to invalidate Category D, the thirty-five hospitals that had been reclassified under that criteria would lose their one-time appeal funding, thereby freeing those funds up for payment to qualified applicant hospitals. These payments, according to plaintiffs, "*might* include the Plaintiff Hospitals in the instant matter." Pls.' Opp'n at 21 (emphasis added). Plaintiffs' argument in this regard is unavailing, for neither party suggests that the thirty-five hospitals that were previously reclassified under Category D would somehow become unqualified for such reclassification were the court to strike down the offending condition in Category D. Consequently, there appears to be no factual basis for the suggestion that these hospitals would "lose their one-time appeal funding," *id.*, were the court to grant the relief plaintiffs seek.

---

[6] The Constitution "vests Congress with exclusive power over the federal purse." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) ("[N]o money can be paid out of the Treasury unless it has been appropriated by an act of Congress") (citing U.S. Const. art. I, § 9, cl. 7); *see also Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937). Moreover, Congress has expressly mandated that executive officials may not "make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).

Plaintiffs also challenge the Secretary's conclusion that the statutory cap on funding under the one-time appeal process has been met, suggesting that such a conclusion is premature and speculative. *Id.* at 22. The only evidence on this issue before the court is a declaration submitted by the Secretary that explicitly states that the entire statutory appropriation has been obligated and that over 150 qualifying hospitals had to be turned away because of lack of funds. Because plaintiffs submit nothing other than unsupported and unconvincing arguments to suggest that these statements should not be trusted, the court rejects them.

Finally, plaintiffs note that one of the eight categories in the January Notice was conceived as a fall-back or residual category of hospitals that would be eligible for reclassification only if funds remained available after the Secretary resolved the applications under the other seven categories. *See* 69 Fed. Reg. at 663. Consequently, plaintiffs assert, the Secretary *could* revoke the reclassification of those hospitals that qualified under this residual category, thereby freeing up funds that *could* be given to plaintiffs. Given that no one has challenged the legitimacy of the reclassifications granted under the residual category and that funds have already been obligated and, at least in part, disbursed to these hospitals, the Secretary states that it is "highly unlikely" that he "would promulgate a new regulation that would rescind reclassification determinations that the Board has already awarded." Def.'s Reply at 11. In light of this statement, the court cannot conclude that plaintiffs have met their burden of presenting anything other than mere speculation that a favorable court opinion would redress their injury.

Importantly, the court notes that plaintiffs' opposition implicitly concedes that it is merely speculative that they will ever receive funding from the Secretary under the one-time appeal process. *See, e.g.*, Pls.' Opp'n at 21 (stating that, if the court grants plaintiffs' requested relief,

funds will be available for payment to qualified applicant hospitals, which "*might* include the Plaintiff Hospitals") (emphasis added); *id.* at 21–22 (suggesting that, if plaintiffs were to prevail on the merits, the Secretary *might* create a revised criterion in a way that provides for hospitals that have already been reclassified and, "*perhaps*, for the Plaintiff Hospitals as well.") (emphasis added). Plaintiffs never suggest, nor could they, that the Secretary would be obligated either to promulgate new criteria or to grant plaintiffs' applications. Therefore, the court is constrained to conclude that plaintiffs have failed to demonstrate that the requested relief will likely redress their injuries. Accordingly, the court must dismiss plaintiffs' claims for lack of standing.[7]

---

[7] Even were the court to conclude that plaintiffs have standing to bring their claims, all indications are that plaintiffs' complaint would become moot before a determination on the merits could be completed. Def.'s Mot. at 14–18; *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) ("[T]his circuit's case law unequivocally provides that once the relevant funds have been obligated, a court cannot reach them in order to award relief."); *W. Va. Ass'n of Cmty Health Ctrs.*, 734 F.2d at 1577 (case was moot because the "funds have been awarded by the Secretary to various recipients" and could not be recouped from those recipients).

While plaintiffs argue that the case is not yet moot because not all the funds have actually been disbursed, D.C. Circuit case law makes clear that a plaintiff may only avoid having her complaint mooted by filing suit before the appropriation lapses "*and* seek[ing] a preliminary injunction preventing the agency from disbursing the funds." *City of Houston*, 24 F.3d at 1427 (emphasis in original). Here, the funds will likely be completely disbursed soon after the appropriation lapses in April 2007. Plaintiffs have not yet sought a preliminary injunction to prevent the disbursement of the funds nor have they indicated that they have any intention to do so. For that matter, the record currently before the court does not suggest that the factual basis for such an injunction is present.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the Secretary's renewed motion to dismiss for lack of jurisdiction [#15] must be granted. An appropriate order accompanies this memorandum opinion.

                                            Henry H. Kennedy, Jr.
                                            United States District Judge

Dated: June 9, 2006